# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| MARANDA A. REYNOLDS, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 6:13-cv-03288-BP |
| CITY OF SPRINGFIELD, MISSOURI, et al., | ) |
| Defendants. | ) |

## PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### Procedural Matters/Standard of Review

1. On August 14, 2013, Defendants ("Movants") filed a Motion to Dismiss and Suggestions in Support thereof (together the "Motion") under Fed.R.Civ.P. 12(b) asserting that Plaintiffs' Complaint fails to state a claim upon which relief can be granted, and also requesting the dismissal of Defendant Greg Burris. When reviewing a motion to dismiss for failure to state a claim all factual allegations in the complaint are to be taken as true with all reasonable inferences drawn in favor of the nonmoving party. *Brooks v. Midwest Heart Group*, 655 F.3d 796, 799 (8th Cir. 2011). The Court is limited to a review of the initial pleadings when considering a motion to dismiss for failure to state a claim. *Id.* at 799-800. If matters outside the pleadings are considered the motion must be treated as a summary judgment motion under Rule 56. *Id.* However, the Court has complete discretion as to whether it will disregard any material beyond the pleading offered in conjunction with a Rule 12(b)(6) motion or consider the material and convert the motion into a Rule 56 motion for summary judgment. *Stahl v. U.S. Dept. of Agriculture*, 327 F.3d 697, 701 (8th Cir. 2003).

1

2. These Suggestions in Opposition assume that the Motion will be treated as a Rule 12(b) motion, and not as a motion for summary judgment under Rule 56 unless the Court orders otherwise.[1]

3. In addition, since the alleged violations of the Missouri Constitution set forth in the Complaint mirror the alleged violations of the United States Constitution, Plaintiffs ask this Court to treat these Suggestions, as applicable, to both the United States and Missouri constitutional issues addressed herein.

## I. Plaintiffs' Complaint Alleges Facts More Than Sufficient to Support Standing

4. Defendants allege in paragraph 5 of its Motion that "...each and every **Defendant** lacks standing pursuant to Article III of the United States Constitution to maintain this action." The aforementioned reference to "Defendant" in its Motion was clearly a typographical error and is treated by the Plaintiffs as such. Defendants limit their no standing argument to the first prong in the three part standing test set out in *Lujan v. Defenders of Wildlife.* 504 U.S. 555, 560-61 (1992). Defendants contend that the Plaintiffs have not suffered what the *Lujan* holding requires: an "injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized . . . ." *Id.*

### A. The Complaint Alleges a Concrete and Particularized Interest.

5. Movants argue that Plaintiffs claims are not individualized to the Plaintiffs; that Plaintiffs' claim is just a generalized grievance no different from any other citizen. To the contrary, Plaintiffs have pled very specific facts that show a legally protectable interest that is concrete, particularized and actual, that is not conjectural or

---

[1] Should this Court decide to convert Defendants' Motion to Dismiss into a motion for summary judgment under Rule 56, Plaintiffs request that this Court notify the parties of such decision so that Plaintiffs are provided opportunity to submit their own affidavits and exhibits. Rule 12(d).

2

hypothetical, and that is different from the public as a whole, as detailed below and in the Complaint.

6. The first prong (particularized interest) of the three part standing test in *Lujan*, and sole prong of the test and sole basis for the Motion applicable to all Plaintiffs, has clearly been satisfied based on the following unique, special and distinct allegations in the Complaint that set these Plaintiffs apart from any other citizen:

a. Plaintiff Maranda Reynolds d/b/a Springfield Cannabis Regulation is a resident, taxpayer, registered voter, and a **circulator** of the Initiative Petition to amend the Springfield City Code who incurred damages including out-of-pocket expenses, time and effort as a circulator. Complaint, ¶1.

b. Show-Me Cannabis Regulation, Inc. is a Missouri not for profit corporation that incurred damages including out-of-pocket expenses supporting the drive to obtain signatures for the Initiative Petition (the "Petition Effort"). Complaint, ¶ 2).

c. The American Victory Coalition, Inc. is an Oregon not for profit corporation, which also financially supported the Petition Effort. Complaint, ¶ 3.

d. Plaintiffs (circulators) collected signatures on an Initiative Petition to submit to the voters of the City of Springfield an Ordinance. Complaint, ¶ 26.

e. After Plaintiffs (circulators) collected signatures on the Petition it was submitted to the City Clerk on July 13, 2012, pursuant to Section 14.3 of the Springfield City Charter and the City Clerk certified the Petition was sufficient under the Springfield City Charter. Complaint, ¶ 31.

f. The Petition was submitted specifically with the objective of having the Ordinance submitted to the voters for their consideration on November 6, 2012, the Presidential Election Day, which was the next available date that the City could call an election on a ballot issue under Missouri law and the City Charter. Complaint, ¶ 26; 28.

g. The corporate Plaintiffs engaged consultants, including the use of focus groups, to determine that the Presidential Election Day in 2012 optimized the opportunity for passage of the Ordinance and incurred expenses related thereto and in preparing and gathering the signatures for the Petition. Complaint, ¶ 26.

7. The facts alleged in the Complaint by the Plaintiffs are specific as to the Plaintiffs (i.e., Plaintiffs initiated the process, collected signatures, turned in the initiative

3

petition, financed focus groups and surveys as well as other activities, paid for all of the above, and took numerous other steps to promote the Initiative) establishing that the claims are particularized and individualized to the Plaintiffs completely different from the public at large.

8. Further, the Plaintiffs allege in Count II that since the adoption of the City Charter the City Clerk has certified a number of initiative petitions as valid to the City Council and that Plaintiffs were treated differently than any other person or group that had submitted a valid initiative petition. Complaint, ¶ 69.

9. In addition, Plaintiffs also allege that the actions of the Defendants were different and singularly unique from actions taken by the City with respect to other persons or groups that had submitted valid initiative petitions because the City Council had never adopted an initiative ordinance with the stated intent to repeal the same initiative ordinance in order to avoid calling a special election.

10. Thus, the Defendants were applying a different and unlawful standard to the Plaintiffs than what they applied to other persons who were similarly situated, thus denying Plaintiffs the right to freely disseminate their ideas and have the voters consider such ideas through the initiative process. Complaint, ¶ 70, 72, 73. Finally, Plaintiffs alleged that the actions of the Defendants were motivated by vindictive, illegitimate and/or personal animus, ill will, malice and/or bad faith toward the Plaintiffs with the intent to deprive Plaintiffs of their constitutional rights and in contempt for the rule of law. Complaint, ¶ 74.

11. The United States Supreme Court as well as the 8th Circuit have recognized claims for a "class of one" under the equal protection clause based on

intentional and arbitrary discrimination, *Village of Willowbrook v. Olech*, 528 U. S. 562, 564, 120 S. Ct. 1073, 1074-75 (2000); *Mathers v. Wright*, 636 F. 3d 396, 399-400 (8th Cir. 2011) The allegations made by the Plaintiffs in Count II are particularized claims not applicable to the public in general and allege a cause of action for an alleged wrong based on different treatment that has no rationale basis.

12. In *Hollingsworth v. Perry*, 133 S. Ct. 2652 (U.S. 2013), cited by Movants, the District Court allowed the official proponents of Proposition 8 to intervene to defend the constitutionality of the law because the state and local government officials refused to defend it. The court declared Proposition 8 unconstitutional, and the state officials choose not to appeal. An appeal to the 9th Circuit was made by the official proponents. Relying on an interpretation by the California Supreme Court, the 9th Circuit determined that the proponents had standing to appeal. The United States Supreme Court reversed stating that once Proposition 8 was approved by the voters it became a duly enacted constitutional statute and the proponents had no personal stake in defending the enforcement of the law that is distinguishable from the general interest of every citizen. *Id.* at 2663.

13. The *Hollingsworth* Court found, quoting *Lujan*, that there was no standing because the litigant claimed "only harm to his and every citizen's interest in proper application of the Constitution . . . *seeking relief* that no more directly and tangibly benefits him than it does the public at large . . ." *Id.* at 2662 (Emphasis added).

14. The Plaintiffs in the instant case are clearly claiming harm different in type and amount, and seeking relief, and/or damages unique to them, in that the Plaintiffs expended substantial amounts of money and substantial effort, all as alleged in the

Complaint, that sets them apart from the public at large. As a result, these Plaintiffs have a direct stake in the outcome of this action. In addition, Plaintiffs' injuries are likely to be redressed by a favorable judicial decision seeking recovery of their damages, including attorneys' fees, and an order that the Initiative be placed on the ballot.

15. In *Hollingsworth*, the Supreme Court agreed that the proponents of that Initiative Petition had standing through the date that the initiative (Proposition 8 ) was approved by the voters. *Id.* at 2662-2663. The Supreme Court narrowly held that those Petitioners simply had no role (standing) in the *enforcement* of the Proposition 8 and, thus, no "personal stake" in defending its enforcement after it had been sent to the voters. *Id.* at 2663.

16. Plaintiffs in this case were also the original proponents, but due to the actions of the Defendants, the measure was never on the ballot.

17. In *Hollingsworth*, the Supreme Court admitted that the proponents were "unique", "special" and "distinct" in their role in the initiative process when involving both authorities and responsibilities that differ from other supporters of the measure. *Id.* at 2662.

18. Plaintiffs herein were certainly unique, special and distinct for the reasons set forth throughout these Suggestions including, without limitation, complying with Sections 14.3 and 14.4 of the City Charter which delinate the requirements for petitions, contents, execution, duties of the circulators, and filing of the Petition with the City Clerk.

19. Further, this distinction is also evidenced by Plaintiffs leading the Initiative, hiring signature gatherers, and funding the entire campaign.

20. In *Steger v. Franco, Inc.*, cited by the Defendants, two of the three Plaintiffs - who did not have standing - had never even visited the noncompliant ADA building nor did they have any personal knowledge of whether or not the building was accessible, nor did they state "that they would visit the building in the imminent future but for these barriers." 228 F.3d 889, 891-893 (8th Cir. 2000). The one person who merely visited the non-compliant building had standing to seek relief under the ADA. *Id.* at 893-94.

**B. Charter Initiative Petition Proceedings Must be Constitutionally Compliant, Following the Intent of the Drafters.**

21. Movants also cite two cases, *State ex rel. Childress v. Anderson*, 865 S.W.2d. 384 (Mo. App. S.D. 1993) and *State ex rel. Chastain v. City of Kansas City*, 289 S.W.3d 759 (Mo. App. W.D. 2009), for the proposition that the Constitution of the State of Missouri does not guarantee the power to initiate petitions at the municipal level. Even though there is no constitutional right to advance an initiative, the United States Supreme Court has recognized, that if a state chooses to confer the right of referendum to its citizens, it is "obligated to do so in a manner consistent with the Constitution." *Meyer v. Grant*, 486 U.S. 414, 419-20 (1988).

22. As for Missouri, municipal charters are adopted by a vote of the citizens of a municipality. Mo. Const. Art. VI; *State ex rel. Childress* at 387. The authority granted to municipalities by the Missouri Constitution to adopt and amend a charter reflects a city's "broad authority to tailor a form of government that its citizens believe will best serve their interest." *City of Springfield v. Goff*, 918 S.W.2d 786, 789 (Mo. banc 1996). The only limitation of that authority is that charter provisions must be consistent with Missouri's Constitution and laws and the state. If consistent, Charter provisions have the

force and effect of enactments of the legislature. *State ex rel. Childress*, 865 S.W.2d at 387.

23. "In construing City Charter provisions, courts seek the intent of its drafters as gleaned from the language used" *Skaggs v. City of Kansas City*, 264 S.W.3d 694, 698 (Mo. App. W.D. 2008).

24. As a direct result of the ruse and subterfuge of the Defendants, ignoring the United States and Missouri Constitutional requirements and the intent of the Charter, the Plaintiffs lost their constitutional right to express their views and disseminate information to eligible voters during the campaign session leading up to the November election. Complaint, ¶ 45.

25. If the actions of the Defendants are validated, it will render the provisions of Article XIV of the City Charter meaningless because the City Council can in the future avoid their Charter based duty to either adopt or call an election, by adopting an initiative ordinance with the intent to repeal the ordinance within days after the adoption of the ordinance, as happened in this case.

26. Further, if the actions of the Defendants are deemed proper, it will have a chilling effect on future initiative petitions. Plaintiffs and other persons considering the use of an initiative will know that if the City Council does not like a proposed initiative, the City Council can avoid calling an election by adopting the initiative ordinance as proposed, and repeal it immediately, thereby subverting the purpose and intent of the initiative process.

27. The Springfield voters specifically rejected an amendment on August 6, 2012, to the Charter to allow the City Council to avoid calling a special election by

allowing the City Council to schedule an election anytime on an election date within one year. Complaint, ¶ 25.

28. At the August 6, 2012, election, the Springfield voters rejected an amendment to the Charter, that would have allowed the City Council to amend an initiative petition prior to a vote by striking parts that are invalid or to correct typographical errors. Complaint, ¶ 25.

29. On the heels of voter rejection of these amendments to the Charter on August 6, 2012, the City Council acted as though they had a license to violate what the voters had rejected and what the Charter specifically prohibited by adopting the initiative ordinance and repealing it within weeks with the intent to avoid calling an election on November 6, 2012. Complaint, ¶ 25.

30. Further, based upon the above actions, Plaintiffs have alleged that Defendants did not follow the intent of the drafters of the Charter, and their actions in deviating from such intent are unconstitutional under both the United States and Missouri Constitutions. Complaint, ¶ 58.

**II. Free Speech Rights to Initiate Petitions, Campaign, Circulate Petitions and Have Issues on a Ballot Are Core Political Speech and Any Restrictions Are Strictly Scrutinized.**

31. Defendants also argue in their Suggestions that Plaintiffs were permitted to speak and collect signatures for the Initiative Petition, as though a little taste of free speech is sufficient. The first step in a free speech analysis is to determine whether or not the Plaintiff's use of the initiative process constitutes expressive conduct invoking the First Amendment. See *Cornelious v. NAACP Legal Defense and Educational Fund, Inc.* 473 U.S. 488, 797 (1985). The initiative process "…provides a uniquely provocative and

effective method of spurring public debate on an issue of importance to the proponents of the proposed initiative." *Wirzburger v. Galvin*, 412 F.3d 271, 276 (1st Cir. 2005).

32. The United States Supreme Court has made it clear that the process involved in proposing legislation by means of initiative involves core political speech. In *Meyer v. Grant*, 486 U.S. 414 (1988) the court overturned Colorado's prohibition on using paid petition circulators because solicitation of signatures for a petition involves protected speech and that prohibition restricted such speech. 486 U. S. at 421-422, n. 5.

33. The regulation of the initiative process by placing restrictions (or terminating the process as in this case) on a corporation or anyone else from freely engaging in the initiative process will implicate the free speech clause of the First Amendment. Because such restriction involves core political speech it is subject to strict scrutiny. *Citizens United v. Federal Election Com'n*, 558 U. S. 310, 340 (2010); *Meyer*, 486 U.S. at 414; *Wirzburger v. Galvin*, 412 F.3d 271, 276-77 (1st Cir. 2005). Under the strict scrutiny test, the Defendants will bear a heavy burden to show that their restrictions on the Plaintiffs as corporations, or anyone else, is the least restrictive means to achieve their objective.

34. The First Amendment "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Roth v. United States*, 354 U.S. 476, 484 (1957). The Plaintiffs in this case sought, by the Initiative Petition, to achieve political change in Springfield, Missouri, with respect to a highly contentious social and political issue: the reduction of the penalties for possession of less than 35 grams of marijuana from a fine of up to $1,000 and 180 days in jail down to a maximum $150 fine.

35. Plaintiffs sought to fully engage in the political process in accordance with Article XIV of the City Charter by commencing a campaign concerning the Initiative directed at the voters, which rights are guarded by the First Amendment as expressed herein. Complaint, ¶s 28, 29, 55, 58-61, 64, 73.

36. In *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182 (1999), non-profit public interest organizations and individuals participating in Colorado's initiative and referendum petition process brought a Section 1983 action against state officials, challenging the statutes regulating the petition process. The United States Supreme Court held that the Colorado statute requiring that initiative-petition circulators to be registered voters violated First Amendment free speech rights as did:

> a. Requiring that initiative-petition circulators wear identification badges bearing the circulator's name; *Id.* at 200 and
>
> b. Requiring proponents of an initiative to report names and addresses of all paid circulators and amounts paid to each circulator. *Id.* at 204.

37. Like the non-profit public interest organizations in *Buckley*, the Plaintiffs in this case are alleging that their First Amendment free speech rights are being violated by the Defendants' abuse of the Initiative Petition process through their decision to turn their backs on the intent of the drafters of the Charter and prevent a vote on the issue.

38. Defendants' argument that the Plaintiffs in this matter are no different from the public at large, despite being the circulators, campaigners, filers of the Initiative Petition, public leaders and financial backers of the Initiative Petition effort, ignores the history of the last 25 years that corporations have the right to fully engage in political speech particularly with respect to core political speech. The rights of the Plaintiffs to circulate petitions and debate the issues and have their ideas, including through the

11

campaign, and their Petition before the voters are all protected under the Free Speech Clause of the First Amendment.

39. Defendants take a very restrictive view of the Complaint allegations including, but not limited to, Plaintiffs' right to engage in the initiative process under the City Charter, to express their views and to disseminate ideas, to gather signatures and ultimately to vote on the Ordinance. Complaint, ¶s 64, 73, 84, 87. It is obvious from the context of the Complaint in its entirety that the Plaintiffs contemplated substantial involvement in the entire electoral process including the right to argue, debate, communicate and campaign for their ideas and to disseminate information to the voters in the event that the City Council did not enact the Initiative Ordinance.

40. If the City Council addressed Plaintiffs' initiative petition honestly then the City would have rejected the proposed ordinance and immediately refused to send the matter to the voters. At that point, Plaintiffs' would have the right to seek a Writ of Mandamus compelling the City Council and City Clerk to place the proposed ordinance on the ballot, as required by the Springfield City Charter. See *State ex rel. Wahlmann v. Reim*, 445 S.W.2d 336 (Mo. banc 1969).

41. Plaintiffs would have had standing to compel the City Council and City Clerk to comply with Section 14.6 of the Springfield City Charter by placing the proposed ordinance to the ballot for the November election when the City Council failed to pass it.

42. The particularized injury suffered by Plaintiffs, the suffocation of their rights as the sponsors/organizers of the initiative petition under the Springfield City Charter, Missouri Constitution, and U.S. Constitution, is the same now as it would have

been if the City had not purposely delayed repealing the ordinance until it was too late to seek a Writ of Mandamus to compel placement on the November 2012 Ballot. The City cannot once again seek to use their unconstitutional actions as a shield in order to prevent this measure from being sent to the voters. Based on the authorities cited above, Plaintiffs have a concrete and particularized injury and standing to challenge the actions of the Defendants.

### III. Right to Vote Not Required for Standing.

43. Defendants argue that the Plaintiffs lacked standing in part because Show-Me Cannabis Regulation, Inc., and American Victory Coalition, Inc. are not "electors" under Section 14.9 of Article XIV of the Springfield City Charter; therefore they were not denied the right to vote and are not protected by the Free Speech Clause of the First Amendment to the United States Constitution. Of course, corporations are not electors and cannot vote, but that does not mean corporations or persons who cannot vote are denied the right to fully express and disseminate their ideas during a campaign prior to an election on whether or not to adopt the Initiative as alleged by the Plaintiffs. See *Citizens United v. Fed. Election Com'n*, 558 U.S. 310 (2010).

44. This argument ignores the constitutionally protected rights of Plaintiffs as corporations to fully engage in the election process by expressing their views and disseminating their ideas directly to the voters under the Free Speech Clause and the Petition Clause of the First Amendment to the Constitution of the United States, which rights are further protected by the Due Process Clause and the Equal Protection Clauses of the Fourteenth Amendment.

13

45. This protection has been extended to corporations by explicit holdings in the context of political speech. See e.g. *Grosjean v. American Press Co.*, 297 U.S. 233, 244 (1936).

46. Political speech does not lose First Amendment proection "simply because its source is a corporation." *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 784 (1978).

47. "Corporations and other associations, like individuals, contribute to the discussion, debate and the dissemination of information and ideas that the First Amendment seeks to foster". *Citizens United*, 558 U.S. at 343 (quoting *Bellotti*, 435 U.S. at 783). Political speech of corporations is treated no differently under the First Amendment than free speech of "natural persons". *Bellotti*, 435 U.S. at 776.

48. The First Amendment "protects the rights of corporations to petition legislative and administrative bodies." *Id.* at 791, n.31.

49. Defendants argument is fundamentally flawed because it is based on the incorrect assumption that corporations lose their constitutional rights to speak because they are not electors under Section 14.9 of the Charter.

### IV. Maranda Reynolds d/b/a Springfield Cannabis Regulation Is An Individual.

50. Defendants assert that because Plaintiff is listed as a d/b/a that this action cannot be maintained by her, as a d/b/a would not qualify as an "elector." Plaintiffs incorporate the above argument that free speech protections extend far beyond just "electors".

51. In addition, this argument ignores well settled law that the use of a fictitious name does not create a distinct legal entity separate from the individuals or

impact the rights of the individual. *See State ex. rel Nixon v. RCT Development Ass'n*, 290 S.W.3d 756, 760-761 (Mo. App. W.D. 2009).

52. In regard to the use of a fictitious name, Missouri law only requires that the name be registered before the person do or transact any business in the state. Mo. Rev. Stat. § 417.200 (West 2013). However, even the failure to register the fictitious name does not impact the right of an individual to sue in the name of the unregistered fictitious name or enter into a contract. *See Phillips v. Hoke Const., Inc.*, 834 S.W.2d 785 (Mo. App. S.D. 1992).

53. Defendants cite no authority for the claim that Maranda Reynolds is not an individual. Regardless, if the Court determines that her identity be pled with specificity, Plaintiffs will promptly comply. Clerical issues of this nature do not warrant dismissal of a complaint.

54. Defendants claim that Maranda Reynolds' attempt to vote may constitute a felony is beyond comprehension. RSMo. § 115.631 sets forth 26 subsections detailing various felony offenses related to elections. None of those sections apply to Ms. Reynolds.

55. Thousands of individuals in the City of Springfield do business under fictitious names yet when they enter a polling station, they certainly are not committing a felony by casting their vote.

### V. City Manager, Greg Burris, Is A Proper Party But Not a Necessary Party.

56. While Defendant, Greg Burris, is a proper party, Plaintiffs concede that he is not a necessary. Therefore, Plaintiffs have no objection to the dismissal of Greg Burris *sua sponte*.

WHEREFORE, above considered, Plaintiffs pray for an order of this Court overruling Defendants' Motion to Dismiss, and for such other and further relief as the Court deems just and proper.

CARNAHAN, EVANS, CANTWELL & BROWN, P.C.
2805 S. Ingram Mill Road
P.O. Box 10009
Springfield, Missouri 65808-0009
Phone: (417) 447-4400
Fax: (417) 447-4401
E-mail: jsheppard@cecb.com
E-mail: chorton@cecb.com
ATTORNEYS FOR PLAINTIFFS

Respectfully submitted,

CARNAHAN, EVANS, CANTWELL & BROWN, P.C.

By: /s/
Joseph D. Sheppard, III
Missouri Bar No. 37525

By: /s/
Christiaan D. Horton
Missouri Bar No. 46003

## CERTIFICATE OF SERVICE

The undersigned certifies that a complete copy of the foregoing document was served upon the attorneys of record for each party to the above action via electronic filing with the U.S. District Court, Southern Division of the Western District of Missouri on the 29th day of August, 2013.

/s/ Joseph D. Sheppard, III
Attorney of Record

JDS/rss
14843-001/Doc #455420_5
8/27/2013